UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JAMES A. TORCHIA,<br>CREDIT NATION CAPITAL, LLC<br>CREDIT NATION ACCEPTANCE, LLC,<br>CREDIT NATION AUTO SALES, LLC,<br>AMERICAN MOTOR CREDIT, LLC,<br>SPAGHETTI JUNCTION, LLC,<br><br>Defendants. | Case No.<br>1:15-cv-03904-WSD |

## DEFENDANTS' RESPONSE IN OPPOSITION TO SEC'S POST-HEARING BRIEF

The SEC continues to overlook key aspects of the Defendants' business, advance flawed arguments, and cite case law with no analysis, hoping the Court will rubber-stamp its recommendation for draconian relief. That does not meet the standard. *SEC v. Globus Grp., Inc.*, 117 F. Supp. 2d 1345, 1349 (S.D. Fla. 2000).

The principal fallacy in the SEC's case is that it continues to ignore important facts about the Company's life settlements transactions. For example,

1

the SEC argues that Credit Nation stands to lose $700,000 on its sale of a portion of one Sneider policy and that the Sneider policies, in the aggregate, are worth less than $1 million. ECF No. 60 ("Br.") at 10-11; SEC's PI Hr'g Ex. 19. However, the chart below easily illustrates the cash flow for these policies (using Mr. Freeman's premium projections, which the Company has not confirmed). If the insured lives to life expectancy, the Company will clear more than $11.4 million.

### Sneider Policy Illustration[1]

|  | Cash Inflow | Cash Outflow |
|---|---|---|
| **Purchase Price** |  | $1,200,000 |
| **Freeman's Estimated Premiums** |  | $13,228,883 |
| **Revenue from Sales** | $2,050,000 |  |
| **Maturity Value** | $30,000,000 |  |
| **Maturity Owed to Third Party** |  | $6,150,000 |
| **Total** | $32,050,000 | $20,578,883 |
| **Net to Company** | $11,471,117 |  |

Similarly, there are numerous additional holes in the SEC's presentation. The SEC claims that Credit Nation misled investors when it represented that their investments would be "100% asset backed." Br. at 2. But the SEC again ignores clear disclosures to investors that give the Defendants broad discretion in valuing assets.

---

[1] *See* Ex. A, Decl. of Jessica Hardie ("Hardie Decl.") ¶¶ 4-5.

The SEC declares that the Defendants did not effectively challenge Bryan Freeman's fair market value analysis. Br. a 5-6. But the Defendants provided ample evidence of Mr. Freeman's bias, lack of credibility, and self-interest to demonstrate the dubiousness of his analysis and opinion. PI Hr'g Tr. 177:23-178:9; 181:9-24; 183:21-184:13; 188:11-15; 193:20-194:20; 199:12-19; 218:23-219:13. Moreover, Mr. Freeman conceded he did not analyze whether Credit Nation is able to pay premiums and hold policies. *Id.* at 188:11-18. That analysis is far more critical to Credit Nation's business strategy and how it views its financial health than any estimate of what the policies might sell for in an unrelated market or how the policies may be valued under GAAP. Mr. Freeman also agreed that Credit Nation's buyers may value policies differently than he does and that, in many instances, a company is better off holding a policy than selling it. *Id.* at 188:11-15; 193:20-194:20; 196:5-9.

The SEC points out that Credit Nation's financials would look worse under GAAP because they would include unearned revenue as an additional liability. Br. at 6. But in other respects, the financials would look better under GAAP because premiums would not be classified as expenses, as they are in the Financial Packets. PI Hr'g Tr. 67:4-67:23.

The SEC repeatedly chastises the Defendants for not having cash reserves equal to one year's worth of life insurance premiums. Br. at 6-7. But it cites no legal authority requiring the Defendants to do so, nor does it argue that the Defendants represented they would. In their business judgment, the Defendants preferred to purchase additional assets to generate revenue rather than setting funds aside in an idle bank account. PI Hr'g Tr. 217:20-218:1; 275:25-276:10.

The SEC continues to allege that Jim Torchia misappropriated funds, but the Defendants provided ample evidence – both documents and testimony – that the transfer of funds is in repayment of loans that he made to the Company and that his loans enabled the Company to buy additional assets. *Id.* at 24:17-22; 26:7-10; 205:15-22; 216:13-25; 304:10-21; 309:13-310:7; 312:12-17; 323:5-9; 323:21-324:12; Defs.' PI Hr'g Ex. 137.

The SEC maintains that Torchia is not competent to manage Credit Nation's life settlements, but he has been appointed to do just that in connection with three SEC receiverships. PI Hr'g Tr. 228:11-18; 229:3-10; 334:12-335-14; Decl. of Michael Quilling ¶¶ 5-13, ECF No. 12-2. The SEC also wildly asserts that Torchia is not concerned about Credit Nation's viability, but he has substantial personal funds invested in the Company and cares very much about his employees. PI Hr'g Tr. 205:15-22; 304:10-21; 309:13-310:7; 312:12-17; 323:21-324:12.

The SEC cherry-picks one financial certification, the certification covering the slow holiday season, to suggest Credit Nation is in dire financial straits. Br. at 8. But since the Court entered the Consent Order, the Company has earned nearly $2 million in whole policy sales alone, and it did not retain the obligation to pay premiums on those policies. Hardie Decl. ¶ 6.

The SEC suggests that the Company violated the Consent Order by transferring funds to related parties. Br. at 14-15. But the Order permits the Company to pay premiums on policies purchased by investors, and substantially all of the transactions the SEC questions are obviously for the payment of policy premiums. SEC's PI Hr'g Exs. 68, 103, 104; Hardie Decl. ¶¶ 7-8.

The remaining expenses the SEC cites are a $120 expense erroneously charged to "Torchia Draw" (which has been reversed) and ones covering a small amount of operating expenses incurred by River Green which assists Credit Nation in maintaining its assets. Hardie Decl. ¶¶ 7-8. Despite having each of the identified certifications for a month or more, the SEC did not bother to ask about the nature of these transactions before including them in its brief.

The SEC simply has not sustained its burden for preliminary relief in this case. Its motion should be denied.

Respectfully submitted this 8th Day of February, 2016.

                                                                                           /s/ *James M. Johnson*
James M. Johnson
Georgia Bar No. 394615
jjohnson@knightjohnson.com
Sherri G. Buda
Georgia Bar No. 093399
sbuda@knightjohnson.com

**KNIGHT JOHNSON, LLC**
One Midtown Plaza
1360 Peachtree Street, NE
Suite 1201
Atlanta, Georgia 30309
Phone: (404) 228-4822
Fax:   (404) 228-4821

                                                     */s/ Katherine S. Addleman*
Katherine S. Addleman
(Admitted *Pro Hac Vice*)
Texas Bar No. 00905400
kit.addleman@haynesboone.com
Stephen L. Corso
Georgia Bar No. 188747
steve.corso@haynesboone.com
Timothy A. Newman
(Admitted *Pro Hac Vice*)
Texas Bar No. 24070326
timothy.newman@haynesboone.com

**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Tel: (214) 651-5000
Fax: (214) 651-5940

1221 McKinney Street, Suite 2100
Houston, Texas 77010
Tel: (713) 547-2000

6

Fax: (713) 547-2600

*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULES AND SERVICE**

In accordance with L.R. 7.1(D), I certify that the foregoing Brief was prepared in Times New Roman, 14-point font, one of the fonts specified in L.R. 5.1(C). This Brief was prepared with a margin of one and one-half inches (1½) on the top of the page and a margin of one (1) inch on the left side of the page, and the motion is proportionately spaced and no longer than 15 pages in length. I hereby certify that I have served the foregoing by filing through the Court's CM/ECF system which will deliver electronic notice of such filing to the following attorneys of record:

This 8th Day of February, 2016.

Walter Jospin
Regional Director

M. Graham Loomis
Regional Trial Counsel

Joshua A. Mayes
Senior Trial Counsel

Securities and Exchange Commission
950 East Paces Ferry Road, NE, Suite 900
Atlanta, GA 30326

>*/s/ James M. Johnson*
>James M. Johnson
>Georgia Bar No. 394615