**Richard Sutherland**
**5256 Pebble Beach Blvd.**
**Winter Haven, FL 33884**
**863-229-7255**

FILED IN CHAMBERS
U.S.D.C. Atlanta

DEC 27 2016

JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

December 20, 2016

The Honorable William S. Duffey, Jr.
United States District Judge
1721 Richard B. Russell Building and U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303-3309

**Re: Securitities and Exchange Commission vs. James A. Torchia et al.**
**Case No. 1:15-cv-3904-WSD**
**Al Hill, Esq., Receiver**

Dear Judge Duffey:

I am seventy-six years old and my wife, Katherine, will be sixty-six years old on January 8. We are both retired with no earned income. Ten years ago, on June 30, 2006, my wife and I purchased a viatical contract from National Viatical, Inc. on the life of Jimmy Martin, paying $155,000.00 for the policy. A copy of that purchase agreement is attached to this letter. On or about December 19, 2016, I received a letter from Al Hill, Esq. regarding the Jimmy Martin file. A copy of that letter along with the proposed agreement from Mr. Hill for us to pay $25,820.34 to the Receiver inorder to keep the policy. If we do not agree, Mr. Hill will request an order from the court compelling us to transfer our interest in the Jimmy Martin policy over to the Receiver.

When my wife and I bought the Martin policy back in 2006, Credit Nation did not exist. My wife and I paid full price for the policy without notice of any claims, past, present or future that could be made against the policy. I have been advised that we are Bona Fide Purchasers for Value Without Notice and that our rights in the policy are superior to those of a bankruptcy trustee as well as a receiver. I am informed that this is "horn book" law. My wife and I both oppose this over-reaching by the Receiver in this case, an attorney at law who is familiar with the law in this regard. Mr. Hill's actions will compel us to hire an attorney to defend what is patently ours. It is my hope that the Court will require Mr. Hill to explain himself to the Court and restrain Mr. Hill from this type of conduct.

Very truly yours,

[signature]

RICHARD SUTHERLAND
Enclosure

taylor | english

Taylor English Duma LLP 1600 Parkwood Circle, Suite 400 Atlanta, Georgia 30339
Main 770.434.6868 Fax 770.434.7376 taylorenglish.com

December 16, 2016

Via Email to: richsuth@aol.com
and Via Federal Express (Tracking No.

Richard Sutherland
5256 Pebble Beach Boulevard
Winter Haven, FL 33884

RE: Notice to Beneficiary from Al Hill, Receiver;
SEC v. James A. Torchia, et al.
United States District Court
Northern District of Georgia, Atlanta Division
1:15-CV-3904-WSD

Dear Mr. Sutherland:

As you may know, I was appointed as the Receiver of National Viatical, Inc. ("NVI") in the above matter on October 25, 2016, by Order and Opinion of the United States District Court for the Northern District of Georgia (the "Court"), which was an expansion of a Receivership granted on April 25, 2016, for James Torchia and Credit Nation Capital, LLC (collectively, "Credit Nation"), among others, upon the finding that Credit Nation was in a "precarious financial situation" with an inability or unwillingness to manage their finances. Assets of the Credit Nation were frozen to "preserve the status quo and to preserve sufficient funds for the payment of any disgorgement award."

The Receivership of NVI was granted upon the finding of the Court that NVI was funded using by Credit Nation's personnel, loans from Credit nation, transfers of money to and from Credit Nation, and transfers of and sales of policies between NVI and Credit Nation.

Since being appointed Receiver and actively taking over operations on October 25, 2016, I have been seeking to preserve assets, including continuing to pay premiums on all active policies of NVI. I have also sought guidance from the Court regarding the proper ownership and disposition of policies in which NVI has an interest, either as a beneficiary or as a payor of premiums.

On May 25, 2016, the Court issued an Opinion and Order (the "Pooling Order") regarding the ownership and potential pooling of various policies, which is applicable to the NVI Receivership. A copy of the Pooling Order is enclosed. The Pooling Order provides that "Direct Investors" may retain full interest in the policies in which they have invested, provided they:

(a) repay to the Receivership all previous premiums paid by [NVI] and its affiliates; and
(c) pay to the Receivership the fair market value of the services rendered by Defendants for servicing of the policies; and
(c) assume responsibility for all future premiums.

Subparts (a) and (b) are referred to as "Advanced Amounts."

This letter is being sent only to those investors who have invested in policies which clearly fall within the definition of Direct Investors set forth in the Order. The definition includes only those investors who are the sole beneficiary of the death benefits and are named as such on the records of the insurer. Some of you may also own other policies for which you do not meet the definition of a Direct Investor, either because that policy has more than one beneficiary, because CN Capital is the named beneficiary or for other reasons. Your rights with respect to such other policies will not be impaired by the actions requested herein – the Receiver will address such other policies as decisions are made by the Court.

Attached to this letter as Exhibit A is an election form setting forth the details of your policy and the Advanced Amounts you must pay in order to retain your policy. If you choose to retain your policy, please complete the election form and return it to the receiver together with a check for the Advanced Amounts, using the enclosed envelope. If you do not wish to retain your policy, please check the appropriate box and return the form only. Your election and payment must be delivered to the Receiver within twenty (20) calendar days of your receipt of this letter.

If you do not wish to retain your policy or you do not return the election form and payment to the Receiver within the twenty (20) day period, the Receiver will request the Court to issue an order requiring you to assign your policy interest to NVI or the Receiver. See Order at page 12, 14-15. If you opt not to retain your policy, you will become a general creditor of the Receivership and will be eligible to receive a pro rata distribution of the proceeds of the sale of all the Defendant's assets upon liquidation.[2]

Please be advised that I am legally bound to follow the Pooling Order and I am without discretion to make exceptions. I cannot give you legal advice. Therefore, when considering whether to accept the terms detailed on the Notice, I encourage you to seek legal counsel who can inform you of your legal rights and give you legal advice.

---

[2] The amount of the pro rata distribution cannot be determined at this time.

If you have any questions, please go to www.cncreceiver.com or contact me by e-mail at cncreceiver@taylorenglish.com or by phone at 678-336-7154.

Sincerely,

Al Hill
Receiver for NVI

Enclosures
Notice to Receivership
Pooling Order

# Notice to Receivership of Acceptance or Rejection of Policy Ownership

| *SEC v. James Torchia, Credit Nation Capital, LLC, Credit Nation Acceptance, LLC, Credit Nation Auto Sales, LLC, American Motor Credit, LLC, and Spaghetti Junction, LLC*<br>United States District Court<br>Northern District of Georgia, Atlanta Division<br>1:15-cv-3904-WSD | Submit form to:<br>Al Hill, Receiver<br>c/o Taylor English Duma LLP<br>1600 Parkwood Circle, Suite 400<br>Atlanta, Georgia 30339 |
|---|---|

Richard Sutherland
5256 Pebble Beach Blvd.
Winter Haven, FL 33884

Policy:

| | |
|---|---|
| Name of Insured: | Jimmy Martin |
| Insurer: | FEGLI |
| Policy Number | CSA42568510 |
| Death Benefit: | $235,000 |
| Current Annual Premium: | $2,729.16 |

Richard Sutherland ("You") is the Direct Investors in the Life Settlement Policy described above. In order to retain ownership of the policy, the following Advanced Amounts must be remitted to the Receiver at the address listed above **no later than 20 days from your receipt of this Notice.**

| | |
|---|---|
| Repayment of Premiums: | $21,641.71 |
| Fair Value of Services ($400 per year): | $4,178.63 |
| **Total Advanced Amounts** | **$25,820.34** |

In addition to the payment of the Advanced Amounts, You will be responsible for continuing to service the premiums payments on the Policy which, according to our records, are as described above. You understand and acknowledge that premiums on the Policy may increase in the future and You will be collectively responsibie.

Please indicate whether You will accept or reject ownership of the Policy as described above.*

☐ YES, I agree to accept ownership of the Policy. The Advanced Amounts will be remitted and all Policy premiums going forward will be paid, collectively, by all the Direct Investors.

☐ NO, I reject ownership of the Policy.

*Each Direct Investor in the Life Settelement Policy must make an election and submit a completed election form. Without an election form from each Direct Investor, the Receiver cannot transfer ownership of the Policy.

By agreeing to accept ownership of the Policy, You agree to release the Receiver, Credit Nation Capital, LLC, and NVI from any and all claims which You have, or may have, arising out of or related to the Policy.

______________________________ Sign

______________________________ Date

______________________________ Print or type name

JIMMY MARTIN

# National Viatical, Inc.

## Life Settlement Contract Order Form

Date: June 30, 2006 | Purchase Price: $155,000.00

Insurance Company: FEGLI | Policy Number: CSA4256851

Death Benefits: $235,000.00

| PRIMARY PURCHASER | CO-PURCHASER |
|---|---|
| Name: Richard Sutherland | Name: Katherine Sutherland |
| Social Security # 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 | Social Security # 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 |
| D.O.B. 07/19/1940 | D.O.B. 01/08/1951 |
| Mailing Address: 1502 Country Club Dr. | Mailing Address: same |
| Los Altos, CA 94024 | |
| e-mail Address: richsuth@aol.com | e-mail Address: kksutherla@aol.com |
| Day Phone # ( 650 ) 947-4962 | Day Phone # ( 650 ) 988-7550 |
| Evening Phone # ( ) | Evening Phone # ( 650 ) 949-1239 |

If the Purchaser is a Trust (a copy of the Trust is required.)

Trust Name: ______________________

Trust Date: ______________________

Trustee(s): ______________________

City, State, Zip Code: ______________________

Tax ID Number: ______________________

If the Purchaser is a Corporation

Corporation Name:

President:

Street Address:

EIN: ______________________

# AGENCY/POLICY FUNDING AGREEMENT

THIS AGENCY/POLICY FUNDING AGREEMENT ("Agreement") is made and entered into as of the 3rd day of July, 2014, by and among:

**Richard & Katherine Sutherland**
**1502 Country Club Dr.**
**Los Altos, CA 94024**

And National Viatical, Inc. which is a Georgia corporation whose place of business is 9940 Highway 92, Woodstock, GA 30188. National Viatical, Inc., is also South Carolina corporation and its place of business at 33 Market Point Drive, Greenville, SC 29607.

**RECITALS:**

A. National Viatical, Inc. is a company engaged in the identification, qualification, purchase and/or sale of discounted beneficiary rights of proceeds from life insurance polices of persons with a limited life expectancy.

B. Purchaser has assessed, approved of and adopted the criteria utilized by National Viatical in the evaluation process and subsequent purchase of said Policies.

C. Purchaser desires to purchase in one or more Viatical Settlement/Life Settlement Contracts.

**AGREEMENT:**

NOW, THEREFORE, in consideration of the recitals and mutual promises contained herein and other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. Appointment of Agent. National Viatical is hereby appointed as Purchaser's agent for the purpose of facilitating the acquisition of a recorded irrevocable beneficial interest in the death benefits of one or more Viatical Settlement/Life Settlement Contracts on the Purchaser's behalf. National Viatical and Purchaser agree that their relationship is one of agent and principal and that the transaction(s) completed under this Agreement does/do not constitute the sale of a security.

2. Deposit and Release of Funds. Upon execution hereof, Purchaser shall deposit the sum of one hundred fifty five thousand and no/100 dollars ($155,000.00) (the "Purchase Funds") into the **National Viatical, Inc. Bank of North Georgia Account** for the purchase of **FEGLI** policy number **CSA4256851** with a death benefit of **$235,000.00.** Upon the completed changes of the beneficial interest designation by the insurance company, National Viatical, Inc. will release the funds to the seller of the policy.

3. Owner of Record/Correspondence. Unless stated otherwise herein, the administrative ownership of the Designated Policy(ies) shall be recorded in the name of **Richard & Katherine Sutherland.** National Viatical, Inc. will act as the servicing agent of the policy only.

4. <u>Representations by Purchaser</u>. Purchaser hereby represents and warrants that:

4.1 Purchaser is bearing the risk of the purchase of an investment in the Designated Policy(ies) as well as all future premium commitments.

4.2 Purchaser has provided complete and accurate information on the Beneficiary Statement, which is part of this Agreement.

4.3 Purchaser is well versed in financial matters and has access to professional investment advice if required.

4.4 Purchaser has adequate means to provide for current financial needs and possible contingencies.

4.5 Purchaser has no need for liquidity of the investment(s) made in beneficial interests in the Designated Policy(ies).

4.6 Purchaser is able to bear the risk of the purchase of beneficial interests in the Designated Policy(ies) for an indefinite period of time.

4.7 Purchaser is committing to purchase(s) of beneficial interests in the Designated Policy(ies) which bear a reasonable relationship to Purchaser's net worth.

4.8 Purchaser understands that estimate(s) of projected date(s) of maturity of Designated Policy are based solely upon the documented results of an independent medical review and that such opinion is not a guarantee made as to the actual maturity date(s).

4.9 Purchaser understands that the insurer will pay death benefits directly to the irrevocable beneficiary, which can be the purchaser or anyone the purchaser designates as well as the Purchaser's designated agent or Trustee.

4.10 Purchaser represents that the funds deposited for the transaction are not from illegal sources.

5. <u>Duties of National Viatical and its Affiliates</u>. With the assistance of its affiliates, National Viatical accepts responsibility for performance of the duties listed below:

5.1 <u>Certification of Policy Review</u>. Certify to Purchaser that the medical records of the viator(s) and the text of the Designated Policy(ies) have been reviewed and that the following statements are true:

a. A statement documenting the results of the independent third party medical review has been obtained, reviewed to confirm and verify the diagnosis and limited life expectancy; and is included in the viator's file maintained by National Viatical.

b. The face amount (total death benefits) of the Designated Policy(ies) is/are accurate as confirmed by the insurer.

c. The Designated Policy(ies) has/have been issued by insurance company(ies) rated excellent or superior by the <u>A.M. Best Guide to Insurance</u>.

d. Policies purchased will be verified incontestable and past any and all suicide period.

e. The Designated Policy(ies) is/are assignable, transferable, enforceable and, except as may be specifically referenced elsewhere in this Agreement, is/are not subject to any special requirements limitations or liens.

5.2 <u>Files</u>. Prepare and maintain confidential files containing all data and documents pertaining to Purchaser, the Designated Policy(ies) and Purchaser's acquisition of a beneficial interest(s) in same.

5.3 <u>Signatures</u>. Obtain the appropriate signatures on all documents necessary to procure beneficial interest in the Designated Policy(ies) on behalf of Purchaser.

5.4 <u>Recording of Documents</u>. National Viatical, Inc. will: 1) Notify purchaser of premium payments due. 2) track the insured's life and 3) perform other procedures as required from time to time. National Viatical, Inc. is also responsible for executing an irrevocable beneficiary assignment (Assignment) that has been endorsed by the insurance company. Upon receipt of the Assignment, NVI will issue an overview of the assignment to the Purchaser. National Viatical will provide the allocation of Purchasers' funds to specific policies purchased. National Viatical, Inc. has retained the firm of 21st Services, American Viatical Services, Fasano & Associates and EMSI to perform third party verifications of the life expectancies.

5.5 <u>Records</u>. Provide Purchaser with a Viatical/Life Investment Summary containing copies of all executed documents, including this Agency/Policy Funding Agreement, a copy of recorded beneficiary designation in favor of the Purchaser from the applicable insurance company, and any other documents required to complete each Viatical/Life Settlement transaction.

5.6 <u>Tracking</u>. Provide for and monitor the tracking of each viator's status on a regular basis to ensure timely application for payment of death benefits.

5.7 <u>Payment of Policy Premiums</u>. NVI will monitor and bill Purchaser for premiums due on the underlying policy. NVI will obtain annual statements from the insurance company and updated premium illustrations based on current interest rates.

5.8 <u>Application for Death Benefits</u>. Upon underlying insured's demise, National Viatical, Inc. will file the claim for payment of death benefits and direct the insurer to issue payment directly to Purchaser.

6. Premiums will be monitored and billed to the Purchaser. Should Purchaser fail to make the scheduled premium payments, the policy will lapse causing Purchaser to lose their entire investment in the policy.

7. **Compensation and Fees** National Viatical's fees for all services provided in the performance of its duties shall be complete and included in the Purchase Price. Purchaser will not incur costs of any type beyond the amount tendered as the Purchase Price and all future premiums due on the life insurance policy. National Viatical makes no representations as to what specific net amount will be or has been accepted by the viator(s) for the sale of the Designated Policy(ies), nor the specific fees assessed by National Viatical or by any supporting entity including its associates, affiliates, reviewing physicians, laboratories, attorneys, and other contractors. National Viatical shall manage policy to maturity and claim payment to insurance company for no additional fee. NVI will provide periodic reports and information when requested by the purchaser. National Viatical, Inc. will also provide on-line tracking for the Purchasers to access updated medical information on the underlying insured.

8. **No Payment of Interest on Deposit**. Purchaser understands and agrees that interest may be earned by funds held in the NVI Escrow Account; however, any interest that may be earned shall not be paid to Purchaser on Purchase Funds.

9. **Refund Policy**. There will be no refund after purchase of policy is complete however, purchasers can instruct National Viatical, Inc. to market and resell the policy on behalf of the purchaser. The purchaser has final authority to authorize the sale of the policy at any time.

10. **Miscellaneous Provisions**.

10.1 **Binding Effect**. This Agreement shall be binding upon and shall be enforceable by the parties hereto and their respective executors, administrators, heirs, personal representatives, successors and assigns.

10.2 **Assignment**. Only the Purchaser has the authority to assign the rights of this agreement to others. NVI will endeavor to make any changes directed by the Purchaser.

10.3 **Amendments**. No Agreements or other understandings in any way purporting to modify the terms and conditions set forth herein shall be binding upon the parties unless the same shall be in writing and duly executed by all of the parties on or subsequent to the date of this Agreement.

10.4 **Hold Harmless**. Purchaser agrees to indemnify and hold harmless National Viatical, its principals, employees, associates, affiliates or suppliers from any and all damages or liabilities incurred by Purchaser, including acts of simple negligence, excepting only acts of willful or intentional wrongdoing or gross negligence on the part of National Viatical, or due to or arising out of a breach of any representation or warranty made herein to National Viatical.

10.5 **Waiver of Breach**. The waiver of a breach of any provision of this Agreement by either party shall not operate or be construed as a waiver of any subsequent breach of the same or different provisions.

10.6 **Governing Law**. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Georgia.

10.7 **Place of Litigation**. The parties agree that any litigation arising as a result of or in connection with this Agreement or any related agreement or contract, and all

related transactions effected by or as a result of this Agreement shall be brought forth in Atlanta, Georgia and the parties are hereby subject to such jurisdiction.

10.8 Headings. The headings contained in this Agreement are for convenience only and shall not be deemed part of this Agreement in construing or interpreting the provisions hereof.

10.9 Entire Agreement. This Agreement constitutes and contains the complete and final agreement between the parties regarding the specific subject matter of this Agreement. All prior negotiations, discussions and representations are merged into this Agreement. Each party acknowledges that, except as expressly set-forth herein, no representations of any kind or character have been made to it by any other party, or by any party's agents, representatives or attorneys, to induce the execution of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date, month and year first above written.

Richard R. Sutherland
PRINTED NAME OF PURCHASER

X [signature]
SIGNATURE OF PURCHASER

SSN: 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

BIRTH DATE: 7-19-40

Katherine Sutherland
PRINTED NAME OF CO-PURCHASER

X Katherine Sutherland
SIGNATURE OF CO-PURCHASER

SSN: 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

BIRTH DATE: 1-8-51

WITNESS: (on behalf of the Purchaser(s)):

Jayna Renee Sutherland
PRINTED NAME OF WITNESS

X Jayna Renee Sutherland
SIGNATURE OF WITNESS

NATIONAL VIATICAL, INC.

[signature]
BY: JAMES A. TORCHIA, PRESIDENT

WITNESS: (on behalf of National Viatical)

Catrina Tipton
PRINTED NAME OF WITNESS

X [signature]
SIGNATURE OF WITNESS

AGENT:

X
PRINTED NAME (No Signature Required)



Richard Sutherland
5256 Pebble Beach Blvd.
Winter Haven, FL 33884

RECEIVED IN CHAMBERS
U.S.D.C. Atlanta

DEC 27 2016

JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

FIRST CLASS

FIRST CLASS

The Honorable William S. Duffey, Jr.
United States District Court
1721 Richard B. Russel Bldg. and U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303-3309